1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| YVONNE BRATCHER, | ) | 1:10-cv-00752 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
|_____| ) | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1956, completed the 12th grade, and previously worked several jobs including cafeteria cook, housekeeper, nurse's aide, and store clerk. (Administrative Record ("AR") 78, 147, 130-41.) Plaintiff also worked as a substitute teacher in Oklahoma. (AR 204-05.) Plaintiff attempted but did not complete some vocational training. (AR 203-04.) On April 11, 2005, Plaintiff filed an application for SSI, claiming disability beginning on that date due to back problems. (AR 78-79, 80-83.)

**A.    Medical Evidence**

On April 16, 2003, prior to Plaintiff's alleged onset date of disability of April 11, 2005, Plaintiff was seen by Luis T. Teopengco, M.D. (AR 164-65.) Dr. Teopencgo noted that Plaintiff claimed a ten-year history of low back pain as well as other conditions such as stomach aches, hepatitis C, and high blood pressure. (AR 164.)

On April 23, 2003, Martha A. Wiedman, M.D. interpreted an x-ray of Plaintiff's lumbosacral spine and found that there was "moderate disc space narrowing at L5-S1 with mild spondylosis at L4-5," and determined that Plaintiff has "mild degenerative disc disease" and "mild spondylosis." (AR 163.)

Plaintiff was then examined two years later on June 18, 2005, by Ravinder R. Kurella, M.D. for the State of Oklahoma Disability Determination Division. (AR 169-75.) Dr. Kurella indicated that Plaintiff had a history of hypertension but had stopped taking medication. (AR 169.) Plaintiff complained of pain in her lower back due to an injury when she was 20 years old that had gotten progressively worse. (AR 169.) Plaintiff stated that the pain intensity in her back, rated on a scale from one to ten, ranged from six out of ten to ten out of ten. (AR 169.) Dr. Kurella found that Plaintiff had a "[f]ull range of motion of back and bilateral hip and knee joints," a "full range of motion of shoulder and wrists joints," and that her "gait was normal." (AR 171.)

On July 25, 2005, state agency physician Carmen Bird, M.D. reviewed Plaintiff's records and opined that Plaintiff could carry 50 pounds occasionally and 25 pounds frequently, could stand and walk about six hours in an eight-hour day, and was unlimited in her ability to push and/or pull. (AR 177.) Dr. Bird noted that Plaintiff reported a history of hepatis C but that there were no treatment

1   records for that condition in her file. (AR 177.) Dr. Bird limited Plaintiff to occasionally stooping

2   but found no other limitations. (AR 178-182.)

3          Plaintiff was next treated two years later on July 17, 2007, at Community Medical Center.

4   (AR 184.) Plaintiff complained of back pain and right leg pain due to having fallen into a water

5   meter. (AR 184.) Plaintiff's assessment indicated that she could not perform work requiring

6   walking but that "clerical work [was] probably okay." (AR 184.) There was "no restriction of

7   activity [based] on [an] exam of [Plaintiff's] hip [and] back." (AR 184.) Temporary work

8   restrictions were imposed for three months; Plaintiff was limited to not driving, to not doing work

9   requiring climbing ladders or the use of power tools, and to no repetitive bending or lifting. (AR

10  184.)

11         Plaintiff returned to Community Medical Center on October 25, 2007, reporting that her leg

12  pain had worsened. (AR 186.) The physician indicated that Plaintiff could return to full-time

13  restricted work with the following limitations: no repetitive lifting or bending and light work only

14  (lifting less than 20 pounds at one time). (AR 186.)

15         **B.     Lay Testimony**

16         On April 12, 2005, Plaintiff completed an adult function report. (AR 94-101.) Plaintiff

17  stated that she could no longer lift, bend, or use body movements at different jobs. (AR 95.)

18  Plaintiff injured her back "trying to turn a client" and since that time her back "hurt very bad." (AR

19  95.) She indicated that she was able to prepare certain meals and that her boyfriend would help her

20  with her laundry because she had "trouble bending." (AR 96.) She did not perform house or yard

21  work because she could not bend. (AR 97.) Plaintiff did not drive because she had "difficulty"

22  seeing and could not "concentrate" long enough to be a "good driver." (AR 97.) She was able to

23  shop for household items. (AR 97.) Plaintiff's hobbies were reading and watching television, and

24  she would spend time with others on the phone and go to church. (AR 98.) Plaintiff indicated that

25  she would have "trouble sitting for too long" and would have to stand up to "keep from hurting."

26  (AR 99.) Plaintiff believed that she was able to do less than a normal person of her age and size.

27  (AR 99.) Plaintiff stated that she had a "short attention span," that she was unable to finish what she

28  started, and that she needed spoken instructions to be repeated twice. (AR 99.)

On May 19, 2005, Plaintiff's friend John Breedlove completed a third-party function report. (AR 102-10.)  Mr. Breedlove indicated that he would cook for Plaintiff but that she would do household duties when she could.  (AR 102.)  Mr. Breedlove noted that Plaintiff would sometimes have to take care of people but did not indicate who those people were.  (AR 103.)  Mr. Breedlove stated that Plaintiff's "lower back pains surface occasionally when she move[s] [in] a certain way," and that "she cannot get up out of the tub when in a certain position."  (AR 103.)  Plaintiff needed reminders "not to bend her lower extremities." (AR 104.)  Plaintiff was able to prepare food and go shopping for household items, but was unable to do mowing or household repairs.  (AR 104-05.) Plaintiff was unable to "reach or bend to pick up things on the lawn."  (AR 105.)  Mr. Breedlove indicated that Plaintiff's hobbies were reading, watching television, and sewing, and that she did not engage in "sports activities."  (AR 106.)  Plaintiff was able to speak to her relatives on the phone and would attend church when she could or when she felt like it.  (AR 106.)  Mr. Breedlove stated that Plaintiff could not stretch or extend her lower back.  (AR 107.)  Mr. Breedlove further stated that Plaintiff could pay attention for "a long time" and that there was "no problem" with her ability to concentrate.  (AR 107.)  Plaintiff also handled stress and changes in her routine "very well."  (AR 108.)

Plaintiff submitted three letters from other sources.   An undated letter from Albert P. indicates that Plaintiff had been complaining about the pain in her leg for the two months that he had known her; he stated that Plaintiff was able to walk for about a block and then had to stop and rest before resuming.  (AR 156.)  On September 20, 2007, Carla Cole wrote that Plaintiff lived with her in the same house and that Plaintiff had been complaining that her right leg was hurting and bothering her.  (AR 157.)  In an undated letter from Crossroads 2 Recovery International Ministries, Minister Ireland wrote that Plaintiff was a resident of the ministry and that she suffered from an unknown condition with her right leg.  (AR 158.)  As a result, Plaintiff was assigned a lower level bunk because of her inability to climb to a higher one; she also needed assistance entering and exiting higher vehicles.  (AR 158.)  Minister Ireland opined that Plaintiff had a "disabled state."  (AR 158.)

**C.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 52-55, 47-49, 45.)  On November 30, 2007, ALJ Patricia Flierl held a hearing in which Plaintiff and vocational expert ("VE") Jose Chaparro testified.  (AR 196-235.)

**1.     Plaintiff's Testimony**

Plaintiff testified that she was 51 years old on the date of the hearing, married, and had three children over the age of 18 who did not reside with her; another child was deceased.  (AR 200.) Plaintiff had completed the 12th grade and had attempted but not completed vocational training.  (AR 203-04.)  Plaintiff was living in a "board and care home" for approximately three months because she did not have "anywhere else to go."  (AR 201.)  The eight residents of the home had daily chores that they had to perform; Plaintiff's chore was to do the dishes.  (AR 201-02.)  However, Plaintiff indicated that she would "just make the water for them" and that each resident would "normally now . . . wash their own dish[es]."  (AR 202.)  Plaintiff did not have any other chores, but she was responsible for keeping her room clean.  (AR 202.)  Plaintiff stated that she had a valid Oklahoma driver's license but had not driven in three years due to poor eyesight.  (AR 203.)

Plaintiff testified that her last job had been in 2005 in Oklahoma as a substitute teacher for elementary and middle schools.  (AR 204.)  She worked on an as-needed basis four to five days a week.  (AR 205.)  Plaintiff stopped working because her son had been killed on November 5, 2006, and she "couldn't deal with it anymore, so [she] just stopped."  (AR 206.)  Plaintiff then testified that she stopped working in 2005 but was uncertain if she had performed any work after that time; the admitted exhibits indicated that Plaintiff had worked as a substitute teacher's aide from August 2006, through May 2007, which she testified that she had forgotten.  (AR 206-07, 209.)  She testified that she moved back to California from Oklahoma in March or April of 2007, following the death of her ex-husband.  (AR 207, 211.)  Plaintiff then admitted that she could not have worked through May 2007, in Oklahoma.  (AR 212.)  Plaintiff testified that her attorney's office had filled out the exhibit regarding her jobs and that she could not remember if she had worked in August, September, or October 2006 or if she had made more than $800 per month.  (AR 212-13.)

Plaintiff also had prior work experience as a certified nursing assistant for two to three months, which ended due to her back problems. (AR 208.) She worked at York Manor Nursing Home in 2005 for approximately three months. (AR 213, 215.) She also worked at Dillard's department store in 2005 but could not meet their dress code requirements. (AR 214.) Plaintiff testified that she was currently unable to work full-time because of problems with her back and that she had injured her leg in February of either 2005 or 2006 when she fell onto a water meter in Oklahoma. (AR 216.) Plaintiff stated that she went to the hospital when the injury occurred. (AR 217.) Plaintiff also had one session at Green County Mental Health, which was covered through a victim of a crime program. (AR 217-18.) Plaintiff sought help for mental health concerns after her brother was killed in a shooting in 1996 and after her son was killed in 2006; she did not get the help she requested in either instance. (AR 219-20.)

Plaintiff testified that she would develop a "sharp pain" in her back if she sat for too long. (AR 218.) Plaintiff would have back problems when she was vacuuming and when she would sit and watch television. (AR 221.) She would get back pain if she did any activity. (AR 221.) Plaintiff was able to sit for 45 minutes to an hour and could stand for an hour. (AR 221-22.) She could walk for about a quarter of a block and could lift approximately 20 pounds. (AR 222.) Plaintiff's doctor gave her Tylenol for the pain and Plaintiff only took Advil and Tylenol to treat her back pain. (AR 223.) Plaintiff stated that the pain relief would only last for 10 minutes before the pain would "start[] back all over again." (AR 223.) Her back would hurt when she bent down to pick something up. (AR 223.) Plaintiff also had pain in her right knee cap, which would hurt when she was walking or standing. (AR 224-25.)

Plaintiff stated that she needed to sleep for two hours a day, twice a day, due to her high blood pressure medication. (AR 225-26.) Plaintiff's typical day was spent watching television and listening to music. (AR 226.) Plaintiff was able to do her own laundry and clean her room, but did not do any of her own cooking or grocery shopping. (AR 227.) Plaintiff testified that she was "not good" at concentrating or focusing her attention and that she could only concentrate for 20 minutes at a time before needing to take a break. (AR 228.)

### 2.     VE Testimony

The VE testified that Plaintiff's past work as a substitute teacher was light and skilled, her work as a nurse assistant was medium and semi-skilled.  (AR 231-34.)

## D.     ALJ's Decision

On February 12, 2008, the ALJ issued a decision finding Plaintiff not disabled since April 11, 2005, the date of her SSI application.  (AR 9-17.)   Specifically, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the date of her application; (2) Plaintiff's impairments of degenerative joint disease of the right knee and mild degenerative disc disease of the lumbar spine with chronic pain were considered "severe" based on the requirements in the Code of Federal Regulation; (3) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had an RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, and to sit, stand, and/or walk six hours in an eight-hour work day with non repetitive bending or lifting;[2] (5) Plaintiff had no past relevant work; (6) Plaintiff was defined as a younger individual on the alleged disability onset date; (7) Plaintiff had at least a high school education and was able to communicate in English; (8) the transferability of job skills was not an issue as Plaintiff had no past relevant work; (9) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (10) Plaintiff has not been under a disability as defined in the Social Security Act since April 11, 2005, the date of her application.  (AR 12-18.)

Plaintiff sought review of this decision before the Appeals Council.  On March 3, 2010, the Appeals Council denied review.  (AR 4-6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

///

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**E.     Plaintiff's Contentions on Appeal**

On April 27, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ failed to properly consider (1) Plaintiff's subjective pain and limitation testimony, and (2) third-party testimonial evidence.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints.  According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff less than fully credible.

In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (AR 15.)

///

1          **1.      Legal Standard**

2          In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must

3    engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

4    must determine whether the claimant has presented objective medical evidence of an underlying

5    impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.*

6    The claimant is not required to show that her impairment "could reasonably be expected to cause the

7    severity of the symptom she has alleged; she need only show that it could reasonably have caused

8    some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets

9    the first test and there is no evidence of malingering, the ALJ can only reject the claimant's

10   testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons"

11   for the rejection. *Id.*  As the Ninth Circuit has explained:

12          The ALJ may consider many factors in weighing a claimant's credibility, including
            (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
13          lying, prior inconsistent statements concerning the symptoms, and other testimony
            by the claimant that appears less than candid; (2) unexplained or inadequately
14          explained failure to seek treatment or to follow a prescribed course of treatment; and
            (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial
15          evidence, the court may not engage in second-guessing.

16   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

17   omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009);

18   20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work

19   record and testimony from physicians and third parties concerning the nature, severity, and effect of

20   the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

21

22          **2.      The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's
                      Subjective Complaints**

23          In this case, the ALJ found that Plaintiff's medically determinable impairments could

24   reasonably be expected to produce the alleged symptoms.  (AR 15.)  Therefore, absent affirmative

25   evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and

26   convincing. *Vasquez*, 572 F.3d at 591.

27          Plaintiff asserts that the ALJ's decision is void of any sufficient rationale as to why the ALJ

28   ignored and disregarded Plaintiff's testimony concerning her pain and inability to work eight hours

10

a day, five days a week.  Plaintiff argues that the ALJ's determination that Plaintiff can perform minimal daily activities does not support the finding that she was not disabled.  Plaintiff further argues that the ALJ applied an inappropriate analytical standard in finding that the medical evidence does not support Plaintiff's pain testimony.

Plaintiff correctly points out that the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  Thus, "although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." *Id*.  "*The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints*.  The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints. . . ." *Id*. (citing *Luna v. Bowen,* 834 F.2d 161, 165 (9th Cir. 1987)).

Here, however, the ALJ considered several factors in determining Plaintiff's credibility and set forth clear and convincing reasons as to why that credibility was lacking.  The ALJ considered Plaintiff's "scant medical record" and noted that Plaintiff was treated in April 2003, when a "lumborsacral spine x-ray show[ed] only mild degenerative disc disease at L4-S1 and mild spondylosis at L4-5," and was then treated again over four years later in July 2007, "where a clinical note records complaints of right knee pain, but no restriction of activity on exam of the hips or back"; there were no treatment records for the intervening period.  (AR 15.)  "The ALJ is permitted to consider lack of treatment in [her] credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ further considered that the April 2003, x-ray "predates the claimant's alleged onset date" of April 11, 2005, as indicated in her application.  (AR 12, 15.) As such, Plaintiff "appears to be admitting that she is not disabled by these findings."  (AR 15.)  The ALJ then noted that during Plaintiff's next treatment in July 2007, Plaintiff was temporarily restricted for three months to "no driving, climbing ladders or repetitive bending or stooping."  (AR 15.)  Plaintiff's next and last treatment was in October 2007, when Plaintiff was diagnosed with "degenerative joint disease of the

1  right knee" resulting in a permanent restriction of "'light work only' and no repetitive bending or

2  stooping." (AR 15.)  The ALJ determined that "[b]ecause repetitive bending and stooping is not

3  required for a full range of light work, this assessment is essentially consistent with the established

4  residual functional capacity." (AR 15.)

5      The ALJ noted that Plaintiff "said she takes Advil and Tylenol for her pain and medication

6  for her hypertension." (AR 15.)  Treatment of "physical ailments" with "over-the-counter pain

7  medication" is "evidence of 'conservative treatment' . . . sufficient to discount a claimant's

8  testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

9  The ALJ further found that the "State agency medical consultants concluded that the claimant can

10  lift and carry 50 pounds occasionally and 25 pounds frequently and [can] sit, stand and/or walk 6

11  hours in an 8-hour workday with stooping occasionally." (AR 16.)  The ALJ then imposed a more

12  restrictive RFC than the one recommended, finding that Plaintiff can "lift and carry 20 pounds

13  occasionally and 10 pound frequently and [can] sit, stand and/or walk 6 hours in an 8-hour workday

14  with no repetitive bending or lifting." (AR 14.)  Based on the more restrictive RFC, the ALJ

15  determined that "there are jobs that exist in significant numbers in the national economy that the

16  claimant can perform." (AR 16.)

17      The ALJ also noted that "[t]he claimant testified that she lives in a board-and-care home and

18  performs chores including washing dishes for 3 meals a day for 8 people, cleaning her room, and

19  doing laundry." (AR 15.)  Plaintiff correctly points out that the ALJ slightly mischaracterized

20  Plaintiff's testimony as Plaintiff testified that "normally now [the other residents would] wash their

21  own dish[es], we just make the water for them, they wash their own dishes." (Doc. 12, 7:24-26 n.

22  2, AR 202.)  However, Plaintiff also testified that she had chores "every day," would "keep [her]

23  room clean," and did her own laundry. (AR 202, 227.)

24      Plaintiff argues that the ALJ's findings that Plaintiff was able to perform minimal household

25  chores does not support a determination that Plaintiff was not disabled.  An ALJ can appropriately

26  consider Plaintiff's activities of daily living in determining that she was not entirely credible, but the

27  mere fact of a claimant's carrying on certain daily activities does not necessarily detract from

28  credibility as to overall disability. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  However,

a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)*; Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)  A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch*, 400 F.3d at 680-81; *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).  Further, as noted here, the ALJ provided several other reasons for rejecting Plaintiff's claim of disability and did not rely solely on her ability to perform daily activities.  (AR 15-16.)

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination).  Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow the Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

**B.      Consideration of Lay Witness Testimony**

The ALJ's February 12, 2008, decision fails to mention the third-party lay witness testimony of Mr. Breedlove, who completed a third-party function report on May 19, 2005, and the three letters that were submitted from other sources.  (AR 102-10, 156-58.)  Plaintiff contends that the ALJ's silent disregard of this lay witness testimony is reversible error.  Defendant maintains, however, that any error by the ALJ is harmless because the testimony was neither significant, probative, nor vocationally relevant.

///

///

1.     **Failure to Account for Lay Testimony Equals Error**

Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Turner*, 613 F.3d at 1224; *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996). Lay witness testimony cannot be disregarded without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted and substantial evidence supports the ALJ's decision, even though the ALJ does "not clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512. However, a complete failure to discuss lay testimony is error, and a determination must therefore be made as to whether that error is harmless. *See Lewis*, 236 F.3d at 511; *Robbins*, 466 F.3d at 885; *Stout*, 454 F.3d at 1053.

2.     **The Court Can Confidently Conclude that the Error was Harmless**

The party attacking an agency's determination has the burden to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. __, 129 S. Ct. 1696, 1705-06 (2009)*; McLeod v. Astrue*, No. 09–35190, 2011 WL 1886355, at *4 (9th Cir. May 19, 2011). However while it is the plaintiff's burden to show prejudice, the Ninth Circuit determined in *Stout* that it could not conclude that "an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless." *Stout*, 454 F.3d at 1055-56. The Ninth Circuit has also stated that "we have only found harmless error when it was clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination,'" and "had never found harmless an 'ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work.'" *Robbins*, 466 F.3d at 885 (citing *Stout* 454 F.3d at 1055-56). As such, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

1    crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d

2    at 1056.[3]

3         Here, the Court can confidently conclude that the ALJ's failure to discuss the lay witness

4    testimony of Mr. Breedlove and the three submitted letters was harmless, as fully crediting those

5    testimonies would not have resulted in a different disability determination.   The lay witness

6    testimonies do not address how Plaintiff's impairments limit her ability to work and are thus

7    inconsequential to the ultimate determination of nondisability.  Mr. Breedlove's third-party function

8    report does not bolster Plaintiff's credibility.  Mr. Breedlove stated that Plaintiff's "lower back pains

9    surface *occasionally when she move[s] in a certain way*," and that Plaintiff "cannot get out of the

10   tub when [she is] in a *certain position*."  (AR 103) (emphasis added).  Mr. Breedlove's statements

11   do not address Plaintiff's ability to perform work and seem to indicate an occasional impairment that

12   occurs only under certain conditions.

13        Further, additional testimony from Mr. Breedlove directly contradicts Plaintiff's claims.  In

14   her adult function report, Plaintiff indicated that she has a "short attention span" and needs spoken

15   instructions to be repeated twice.  (AR 99.)  Mr. Breedlove, however, stated that Plaintiff can pay

16   attention for "a long time" and that there was "no problem" with her ability to concentrate.  (AR

17

18        [3]The language of *Stout,* 454 F.3d 1050*, and Robbins*, 466 F.3d 880, appears to create a presumption of error
     somewhat difficult to square with *Sanders*, 129 S. Ct. 1696, 1704-05.  Courts cannot use "mandatory presumptions and
19   rigid rules" but must instead conduct a "case-specific application of judgment, based upon examination of the record."
     *Id.* at 1704-05.  "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for
20   errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.' That language seeks to prevent
     appellate courts from becoming 'impregnable citadels of technicality.'" *Id.* at 1705 (citation omitted).  The Ninth Circuit
21   determined that the holding in *Sanders* applies to Social Security disability claims and further explained that "[w]here
     harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error
22   caused harm." *McLeod*, 2011 WL 1886355 at *4-5.  However, *McLeod* then stated that "*Sanders* does not mean that
     the claimant necessarily has to show what other evidence could have been obtained," but instead found that when the
23   record suggested that some features of the error were harmless and others suggested the opposite, remand was
     appropriate.  *Id.* at *5.  The *McLeod* Court then:

24        infer[red] from *Sanders* that, despite the burden to show prejudice being on the party claiming error by the
          administrative agency, the reviewing court can determine from the "circumstances of the case" that further
25        administrative review is needed to determine whether there was prejudice from the error. Mere probability is
          not enough. But where the circumstances of the case show a substantial likelihood of prejudice, remand is
26        appropriate so that the agency "can decide whether re-consideration is necessary." By contrast, where
          harmlessness is clear and not a "borderline question," remand for reconsideration is not appropriate.

27

28   *Id.* (footnotes omitted).

1    107.) Mr. Breedlove also stated that Plaintiff follows written and spoken instructions "very well."

2    (AR 107.) Additionally, Mr. Breedlove indicated that Plaintiff "sometimes" had to "take care" of

3    other people (who were not identified), which was a question that Plaintiff did not address (and left

4    blank) in her function report. (AR 103, 95.) Further, Mr. Breedlove stated that Plaintiff was able

5    to perform household duties, could prepare meals, but was unable to engage in "sports activities."

6    (AR 102-06.) Mr. Breedlove's statements do not address Plaintiff's limitations regarding her

7    vocational capabilities, and only indicate occasional issues that occur under certain circumstances.

8        The three submitted letters also fail to show how Plaintiff's impairments impact her ability

9    to do work. The letter from Albert P. indicated that he had known Plaintiff for "about 2 months,"

10   and that Plaintiff had been "complaining about her leg all the time." (AR 156.) Plaintiff could only

11   walk short distances before having to "stop and rest [and] then start again." (AR 156.) Ms. Cole

12   indicated that she lived in the same house with Plaintiff and that she had been "been complaining

13   that her right leg has been hurting her and has been bothering her." (AR 157.) Minister Ireland

14   stated that Plaintiff "has an unknown condition with her right leg that prevents her from being able

15   to perform regularly as needed." (AR 158.) As a result, Plaintiff was given a "lower level bunk

16   because of her inability to climb to a higher one." (AR 158.) Plaintiff also needed "assistance"

17   while "entering and exiting higher vehicles." (AR 158.) These statements do not indicate a

18   particularly severe or disabling condition and do not address Plaintiff's ability to perform work, nor

19   do they imply limitations beyond those accounted for in the ALJ's assessment of Plaintiff's RFC.

20   Further, while Minister Ireland declared that Plaintiff had a "disabled state," a finding of disability

21   is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1). As such, the ALJ is not

22   required to "give any special significance to the source of an opinion on issues reserved to the

23   Commissioner." *Id*. at § 424.1527(e)(3).

24       The third-party lay witness testimonies submitted by Plaintiff fail to address how her

25   impairment limits her ability to work and are thus inconsequential to the ultimate nondisability

26   determination. *Stout*, 454 F.3d at 1055-56; *Robbins*, 466 F.3d at 885. Accordingly, the ALJ's error

27   in failing to discuss the third-party lay witness testimonies is harmless, as it is a "clear and not a

28   'borderline question'"; as such, "remand for reconsideration is not appropriate." *McLeod*, 2011 WL

1886355 at *5.  The Court can confidently conclude that, even fully crediting the third-party lay

witness testimonies, no reasonable ALJ could have reached a different disability determination.

*Stout*, 454 F.3d at 1056.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

Commissioner of Social Security, and against Plaintiff Yvonne Bratcher.

IT IS SO ORDERED.

**Dated:**    **June 15, 2011**                          **/s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE